UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MEDICA CORPORATION,<br>                              Plaintiff,<br><br>v.<br><br>DIAMOND DIAGNOSTICS INC.,<br>                              Defendant. | )<br>)<br>)<br>)<br>)   Civil Action No.<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT, WITH VERIFICATION

1.   Plaintiff, Medica Corporation ("Medica"), is a Massachusetts Corporation with a place of business at 5 Oak Park Drive, Bedford, Massachusetts, 01730.

2.   Defendant, Diamond Diagnostics Inc. ("Diamond"), is a Massachusetts Corporation with a place of business at 333 Fiske Street, Holliston, Massachusetts, 01746.

3.   Diamond operates in part through its division Mission Diagnostics (collectively referred to as "Diamond") with a place of business at the same location, namely, 333 Fiske Street, Holliston, Massachusetts, 01746.

## JURISDICTION

4.   Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1338 and 1367, pursuant to 15 U.S.C. § 1121, pursuant to 17 U.S.C. § 501 and pursuant to the doctrine of ancillary and/or pendent jurisdiction.

## GENERAL FACTUAL BACKGROUND – MEDICA'S BUSINESS

5.   Medica is in the business of manufacturing and distributing *in vitro* diagnostic products including a line of blood testing analyzers and consumable products related

thereto that pertain to the operation of such analyzers.  Medica has been using MEDICA from on or about September 27, 1983 as its trade name for its above described business.

6.   From as early as 1985, Medica adopted and has continuously used and is still using the mark MEDICA to identify its above referenced *in vitro* diagnostic products including a number of lines of blood testing analyzers and consumable products related thereto and to distinguish those products from those made and sold by others, by, among other things, prominently displaying the mark MEDICA on its products and on user manuals for its products and in promotional materials and on the Internet.

7.   Among Medica's *in vitro* diagnostic products are automated, microprocessor controlled electrolyte analyzers that are for measuring, for example, various combinations of sodium, potassium, chloride and lithium in whole blood, serum, plasma or urine.

8.   On or about November of 1986, Medica adopted and has continuously used and is still using the mark EASYLYTE to identify a line of Medica's automated, microprocessor controlled electrolyte analyzers and consumable products related thereto and to distinguish those products from those made and sold by others, by, among other things, prominently displaying the mark EASYLYTE on its products and on user manuals for its products and in promotional materials and on the Internet.

9.   The EASYLYTE analyzer is an automated, microprocessor controlled analyzer which utilizes ion-selective electrodes for the measurement of, for example, sodium, potassium, chloride and lithium in whole blood, serum, plasma or urine.

10. On or about May 28, 1999, Medica filed an application, pursuant to Section 1(a) (use in commerce) of the Lanham (Trademark) Act, 15 U.S.C. § 1051(a), for registration

of EASYLYTE in the United States Patent and Trademark Office and, on March 28, 2000, EASYLYTE was registered, as United States Registration No. 2,336,060, on the Principal Register.  This registration covers the use of said EASYLYTE for "chemical reagents for scientific or medical research use in electrolyte analysis"; for "chemical reagents for medical diagnostic use in electrolyte analysis"; and for "electrolyte analyzers for medical purposes."  Said registration is now outstanding and valid.  A copy of said registration is annexed hereto as Exhibit A.

11. Medica has filed in the United States Patent and Trademark Office an affidavit of use of said mark as required by 15 U.S.C. § 1058(a), and the registration is still valid.

12. The validity of the aforementioned registered mark EASYLYTE, Medica's ownership of the mark and of the above identified registration of the mark and Medica's exclusive right to use the registered mark EASYLYTE in commerce for the above mentioned goods are incontestable under 15 U.S.C. § 1065, and 15 U.S.C. § 1115(b), as Medica has filed the required affidavit with the Commissioner of Patents and Trademarks pursuant to 15 U.S.C. § 1065.

13. The appearance of the Medica's EASYLYTE analyzers has remained essentially the same from November of 1986 to the present.  Such general appearance of the products can be seen in the two images of the product shown immediately below:

 

14. As a result of Medica's design efforts, promotional activities and extensive sales, the appearance of Medica's above shown products, including, more specifically, one or more of at least the following design features: the overall layout of the design, the color selection (red and blue on tubing), the placement of the display screen and the placement of the menu operating buttons (and/or in relation to the display screen) have become widely known throughout the United States and worldwide, and associated with Medica.

15. One or more of at least the noted design features of Medica's EASYLYTE analyzers have become distinctive and are non-functional symbols and serve as the trade dress for Medica's products in interstate commerce, both in the United States and worldwide.

16. On or about 1994, Medica authored a new software program (hereinafter usually the "R2 Software") for its EASYLYTE analyzers. The R2 Software operates, *inter alia*, the analysis, display and print functions of the EASYLYTE analyzer.

17. On or about May 24, 1994, the R2 Software was first published.

18. The R2 Software for the above referenced EASYLYTE analyzers contains wholly original materials that constitute copyrightable subject matter under the Copyright Act.

4

19. Medica has complied at all relevant times and in all respects with the Copyright Law relative to the R2 Software for its EASYLYTE analyzer, and has registered same in full compliance with the Copyright Law.  A Copy of Medica's Certificate of Registration for its copyright is attached hereto as Exhibit B.

20. Since creating the R2 Software for the EASYLYTE analyzer, Medica has remained the sole proprietor of all right, title and interest in and to the copyrights associated with the R2 Software and of the attached Certificate of Registration relative thereto.

21. On or about 1998, Medica authored an updated version of the R2 Software program (hereinafter usually the "R9 Software") for its EASYLYTE analyzers.  The R9 Software program operates, *inter alia*, the analysis, display and print functions of the EASYLYTE analyzer.

22. On or about October 27, 1998, the R9 Software was first published.

23. The R9 software program for the above referenced EASYLYTE analyzers contains wholly original materials that constitute copyrightable subject matter under the Copyright Act.

24. Medica has complied at all relevant times and in all respects with the Copyright Law relative to the R9 Software for its EASYLYTE analyzers, and has registered same in full compliance with the Copyright Law.  A Copy of Medica's Certificate of Registration for this copyright is attached hereto as Exhibit C.

25. Since creating the R9 Software for the EASYLYTE analyzer, Medica has remained the sole proprietor of all right, title and interest in and to the copyrights

associated with such software and of the attached Certificate of Registration relative
thereto.

### GENERAL FACTUAL BACKGROUND – DIAMOND'S ACTIVITIES

26. Diamond is, *inter alia*, a manufacturer and seller of clinical laboratory equipment
and related components including *in vitro* diagnostic products.  These include a line of
blood testing analyzers and related consumable products that pertain to the operation of
such analyzers.  Some of the consumable products are sold for use with Medica's
EASYLYTE analyzers.

27. On or about June of 2008, Diamond started selling the PROLYTE analyzer in the
U.S.  The PROLYTE analyzer, like the EASYLYTE analyzer, is an automated,
microprocessor controlled analyzer which utilizes ion-selective electrodes for the
measurement of, for example, sodium, potassium, chloride and lithium in whole blood,
serum, plasma or urine.

28. The general appearance of the PROLYTE analyzers can be seen in the below
images:

 

29. The appearance of the PROLYTE analyzers is a colorable imitation of and/or
confusingly similar to Medica's EASYLYTE analyzers.

6

30. Without authorization from, and (until recently) unknown to, Medica, Diamond has copied Medica's R2 Software and/or R9 Software for the EASYLYTE analyzers and distributed copies thereof as part of Diamond's PROLYTE analyzers.

31. In addition, Diamond has, without authorization, misleadingly and/or deceptively used MEDICA and/or EASYLYTE in connection with the promotion and/or sale of PROLYTE analyzers and consumables.

32. On information and belief, Diamond has used EASYLYTE and/or MEDICA in order to palm off Diamond products or, alternatively, in promoting the sale of refurbished EASYLYTE analyzers without clearly disclosing, in such promotional materials, that such products are refurbished.

### COUNT ONE – PIRACY/COPYRIGHT INFRINGEMENT

33. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

34. Without authorization, Diamond has copied from the R2 Software and/or R9 Software and distributed those copies.

35. Medica's R2 Software and R9 Software are the subject, respectively, of the following copyright registrations (the certificates for which are, respectively, shown in Exhibits B and C hereto): (1), *EasyLyte Na/K/Cl/Li software*, United States Copyright Registration Number TX0006904740 (for the R2 Software) and (2), *EasyLyte Na/K/Cl/Li software R9*, United States Copyright Registration Number TX0006904739 (for the R9 Software).

36. Medica did not authorize Diamond's copying or distribution of the copied work or works.

37. As a result of its wrongful conduct, Diamond has infringed the copyright the copyrighted R2 Software and/or R9 Software works and is liable to Medica for copyright infringement pursuant to 17 U.S.C. § 501.  Medica has suffered, and will continue to suffer, substantial losses, including but not limited to damage to its business reputation and goodwill.

38. Medica is entitled to recover damages, which include its losses and any and all profits Diamond has made as a result of its wrongful conduct.  17 U.S.C. § 504.

39. Medica further seeks a preliminary and final injunctions on such terms as this Honorable Court may deem reasonable to prevent and restrain continued infringement of Medica's copyrights.  Absent the issuance of an injunction, there is a likely probability that there would need to be multiple law suits regarding ongoing acts of infringements and/or there is the likelihood of harm to Medica's reputation, for which damages awarded herein could never be sufficient to compensate Medica for all of the harm done.

## COUNT TWO – VICARIOUS COPYRIGHT INFRINGEMENT

40. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

41. On information and belief, Diamond's customers operate Diamond's PROLYTE analyzers that use the infringing software at places open to the public, and/or at places where a substantial number of persons outside of a normal circle of a family and social acquaintances would be gathered.

42. On information and belief, in connection with Diamond's customers' operation of Diamond's PROLYTE analyzers, Diamond's software causes the PROLYTE analyzer to generate output including at least screens and printed testing results.

43. On information and belief, Diamond's customers charge for blood testing analysis generated by means of Diamond's PROLYTE analyzers.

44. The use of Diamond's PROLYTE analyzers by its customers infringes at least one of the rights in the Copyright Act that is exclusive to the Medica, namely, the right to perform the copyrighted work publicly.

45. Diamond has the right and ability to supervise and/or control the activities related to its customers' use of the PROLYTE analyzers.

46. Diamond has a direct financial interest in the use of the PROLYTE analyzers by its customers due to Diamond's sale of consumable products, including most particularly reagent packs, to Diamond's customers.

47. Diamond is a vicarious copyright infringer by virtue of its profiting from the operation of Diamond's PROLYTE analyzers by Diamond's customers under circumstances where Diamond has the right and ability to supervise and/or control its customers' activities.

48. Medica is entitled to recover damages, which include its losses and any and all profits Diamond has made as a result of its wrongful conduct.  17 U.S.C. § 504.

49. Medica further seeks a preliminary and final injunctions on such terms as this Honorable Court may deem reasonable to prevent and restrain continued vicarious infringement of Medica's copyrights.  Absent the issuance of an injunction, there is a

9

likely probability that there would need to be multiple law suits regarding ongoing acts of infringements and/or there is the likelihood of harm to Medica's reputation, for which damages awarded herein could never be sufficient to compensate Medica for all of the harm done.

### COUNT THREE – CONTRIBUTORY COPYRIGHT INFRINGEMENT

50. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

51. Diamond promotes to its customers for PROLYTE analyzers the fact that it sells a specially formulated part, namely, its reagent pack, and that such part is necessary to the operation of the PROLYTE analyzer because the design of such reagent pack allows Diamond's PROLYTE analyzer to function as a single unit.

52. Diamond thus distributes consumables, including most particularly reagent packs, in order to promote their use by customers who use Medica's copyrighted software.

53. Diamond thus is a contributory infringer with respect to the use by Diamond's customers of Diamond's PROLYTE analyzers.

54. Medica is entitled to recover damages, which include its losses and any and all profits Diamond has made as a result of its wrongful conduct.  17 U.S.C. § 504.

55. Medica further seeks a preliminary and final injunctions on such terms as this Honorable Court may deem reasonable to prevent and restrain continued contributory infringement of Medica's copyrights.  Absent the issuance of an injunction, there is a likely probability that there would need to be multiple law suits regarding ongoing acts of infringements and/or there is the likelihood of harm to Medica's reputation, for which

damages awarded herein could never be sufficient to compensate Medica for all of the harm done.

## COUNT FOUR – WILLFUL COPYRIGHT INFRINGEMENT

56. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

57. Medica's EASYLYTE analyzer is acknowledged by Diamond to be a predicate for Diamond's PROLYTE analyzer.

58. On information and belief, Diamond knew the infringed aforementioned copyrighted works belonged to Medica and that Diamond did not have permission to exploit Medica's aforementioned copyrighted works.

59. On information and belief, Diamond conducted a business for personal profit. Diamond was determined to pursue its course of conduct, knowing that it meant infringing on the rights of Medica.

60. On information and belief, persons in Diamond's corporate management, acting within the scope of their employment, participated in the conduct alleged hereinabove, and, as such, are individually liable as infringers of Medica's software.

61. As a result thereof, exemplary or punitive damages should be awarded to Medica and assessed against Diamond and those corporate officers responsible for the pirating and copying of Medica's software.

## COUNT FIVE – TRADEMARK INFRINGEMENT (Lanham Act)

62. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

11

63. Diamond has infringed on Medica's registered trademark EASYLYTE in interstate commerce by various acts including using EASYLYTE in a misleading and/or deceptive manner in connection with at least the sale of consumables for the EASYLYTE analyzers and, on information and belief, of palming off sales of PROLYTE analyzers (and/or reagent packs) and/or in promoting refurbished EASYLYTE analyzers without disclosing upfront and conspicuously that such analyzers are refurbished.  Diamond's use of the EASYLYTE mark is without permission or authority of Medica and is likely to cause confusion, to cause mistake and to deceive.

64. Medica has requested that Diamond cease and desist from its acts of infringement but Diamond has not ceased some, if not all, such acts.

### COUNT SIX – WILLFUL TRADEMARK INFRINGEMENT (Lanham Act)

65. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

66. On information and belief, Diamond's heretofore alleged acts of infringement have been committed with the intent to cause confusion, mistake and to deceive.

### COUNT SEVEN - UNFAIR COMPETITION (Lanham Act)

67. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

68. Diamond has infringed on Medica's trademark and trade name MEDICA in interstate commerce by various acts including using MEDICA in a misleading and/or deceptive manner in connection with at least the sale of consumables and/or in promoting refurbished EASYLYTE analyzers without always disclosing upfront and conspicuously

12

that such analyzers are refurbished.  Said use of the MEDICA mark and name by Diamond is without permission or authority of Medica and is likely to cause confusion, to cause mistake and to deceive.

69. Diamond's aforedescribed use of EASYLYTE and/or MEDICA on or in connection with goods and/or their containers is the use of a false designation of origin.

70. The aforedescribed activities have occurred in interstate commerce.

71. Such acts of Diamond are in violation of 15 U.S.C. § 1125(a), in that Diamond has used in connection with goods a false designation of origin and/or a false or misleading description or representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Diamond's goods with Medica and/or of Medica's goods with Diamond, or as to the origin, sponsorship or approval of Diamond's goods or commercial activities by Medica and/or as to the origin, sponsorship or approval of Medica's goods or commercial activities by Diamond.

72. On information and belief, the foregoing acts of unfair competition were committed with the intent to cause confusion, mistake and to deceive.

73. Medica has requested that Diamond cease and desist from its acts of infringement but Diamond has not ceased some, if not all, such acts.

### COUNT EIGHT - UNFAIR COMPETITION (Common Law)

74. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

13

75. From a time long prior to Diamond, Medica has used the mark EASYLYTE to identify Medica's goods and to distinguish them from those made and sold by others, by, among other things, prominently displaying the mark EASYLYTE on the goods, their containers and the displays associated therewith.  In addition, Medica has prominently displayed the mark EASYLYTE on letterheads, bills, in advertising and on the Internet.

76. From a time long prior to Diamond, Medica has used the mark MEDICA to identify Medica's goods and to distinguish them from those made and sold by others, by, among other things, prominently displaying the mark MEDICA on the goods, their containers and the displays associated therewith.  In addition, Medica has prominently displayed the mark MEDICA on letterheads, bills, in advertising and on the Internet.

77. Alternatively, as a result of these sales and advertising by Medica, Medica's marks have developed and now have a secondary and distinctive trademark meaning to purchasers in Medica's trading area.  These marks have come to indicate to purchasers a meaning of the aforementioned goods originating only with Medica.

78. As a result of the association by consumers of the marks EASYLYTE and MEDICA with Medica, Diamond's misleading and/or deceptive use of MEDICA and EASYLTYE is likely to cause confusion for said consumers.

79. These acts of Diamond constitute unfair competition and infringement of Medica's common law rights in MEDICA and EASYLYTE.

**COUNT NINE – WILLFUL UNFAIR COMPETITION (Common Law)**

80. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

14

81. On information and belief, Diamond has infringed Medica's marks with the intent to deceive the public into believing that Diamond's goods are made, approved by, sponsored by or affiliated with, Medica.

**COUNT TEN –TRADE DRESS INFRINGEMENT (Lanham Act)**

82. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

83. From on or about 1985, Medica has used its aforedescribed distinctive, non-function product design to identify Medica's goods and to distinguish them from those made and sold by others, by, among other things, prominently displaying the product design and the displays associated therewith.  In addition, Medica has prominently displayed the product design in advertising and on the Internet.  As a result of Medica's sales and advertising, Medica's product design developed and now has a secondary and distinctive trademark type meaning to purchasers in Medica's market area.  Medica's product design has come to indicate to purchasers a meaning of the aforementioned goods originating only with Medica.

84. Diamond's activities, in selling and offering for sale merchandise which confusingly imitates and copies the distinctive, non-functional design features of Medica's EASYLYTE analyzer is the use of a false designation of origin.

85. Diamond's aforedescribed activities have occurred in interstate commerce.

86. Such acts of Diamond are in violation of 15 U.S.C. §1125(a), in that Diamond has used in connection with goods a false designation of origin which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or

association of Diamond's goods with Medica and/or of Medica's goods with Diamond, or as to the origin, sponsorship or approval of Diamond's goods or commercial activities by Medica and/or as to the origin, sponsorship or approval of Medica's goods or commercial activities by Diamond.

87. On information and belief, the foregoing acts of unfair competition were committed with the intent to cause confusion, mistake and to deceive.

### COUNT ELEVEN - UNFAIR COMPETITION (Common Law)

88. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

89. As a result of the association by consumers of Medica's aforedescribed product design features, Diamond's said use of the aforedescribed product design features for the PROLYTE analyzer is likely to cause confusion for said consumers.

90. Said acts of Diamond constitute unfair competition and infringement of Medica's common law rights in its product design.

### COUNT TWELVE – WILLFUL UNFAIR COMPETITION (Common Law)

91. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

92. On information and belief, Diamond has infringed Medica's aforementioned product design with the intent to deceive the public into believing that Diamond's goods are made, approved by, sponsored by or affiliated with, Medica.

## COUNT THIRTEEN – UNFAIR AND DECEPTIVE
## ACTS OR PRACTICES (M.G.L. ch 93A)

93. Medica hereby repeats and re-alleges each and every one of the foregoing allegations as if set forth fully herein.

94. At all times relevant hereto, the Medica and Diamond were engaged in trade or commerce.

95. Diamond's actions constitute unfair or deceptive acts or practices within the meaning of Mass. Gen. L. c. 93A, § 2.

96. Diamond's acts were performed willfully and knowingly.

97. As a result of the unfair or deceptive acts or practices, Medica sustained injury.

## DAMAGES STATEMENT REGARDING TRADEMARK INFRINGEMENT,
## TRADE DRESS INFRINGEMENT AND UNFAIR COMPETION

98. Medica has been extensively damaged by Diamond's illegal actions in an amount to be determined by this Court, including lost sales, lost profits and damage to its reputation and good will.

99. Medica requests that this Honorable Court assess enhanced and punitive damages against Diamond in the fullest amount permissible by law, in view of the egregious, malicious, and extensive nature of Diamond's bad faith activities complained of herein, and in view of the willful nature of the violations, and the significant damage to Medica, as set forth above.

100.    Medica is suffering irreparable harm, and will continue to do so, unless Diamond is restrained and enjoined by this Court from continuing to commit the aforesaid acts.  Absent the issuance of an injunction, there is also the probability that

17

there would need to be multiple law suits regarding ongoing acts of infringements and/or of unfair competition and there is also the likelihood of serious harm to Medica's reputation, for which damages awarded herein could never be sufficient to compensate Medica for all of the harm done.

WHEREFORE, the Plaintiff, Medica Corporation, prays that this Court enter judgment in favor of Medica, and against Diamond, on all counts of the Complaint and that:

1. This Court grant a preliminary and permanent injunction pursuant to the powers granted it under 17 U.S.C. § 502, enjoining and restraining defendant and its agents, servants, employees and attorneys, and all persons acting in concert or participation with any of them from making or distributing any machine, CD ROM, ROM, PROM, EPROM or EEPROM (hereinafter collectively "PROM") which contains any software copied from either or both the R2 Software and the R9 Software including but not limited to Diamond's PROLYTE analyzer or the eprom for Diamond's PROLYTE analyzer;

2. This Court grant a preliminary and permanent injunction pursuant to the powers granted it under 17 U.S.C. § 502, enjoining and restraining defendant and its agents, servants, employees and attorneys, and all persons acting in concert or participation with any of them from making or distributing all consumables, including reagent packs, for use in any analyzer which contains any software copied from either or both the R2 Software and the R9 Software including but not limited to Diamond's PROLYTE analyzer;

18

3. That the Court order Diamond Diagnostics, Inc. to pay Medica Corporation's general, special and actual damages including profits pursuant to 17 U.S.C. § 504(b) as well as exemplary and/or punitive damages.

4. That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding any and all analyzers or PROMs which contain any software copied from either or both the R2 Software and the R9 Software including but not limited to Diamond's PROLYTE analyzer;

5. That the Court enter an order of impoundment pursuant to 17 U.S.C. §§ 503 and 509(a) impounding any and all consumables for use in any analyzer which contains any software copied from either or both the R2 Software and the R9 Software including but not limited to Diamond's PROLYTE analyzer;

6. This Court grant a permanent injunction pursuant to the powers granted it under 15 U.S.C. § 1116 and under state, common law and/or the principles of equity, enjoining and restraining defendant and its agents, servants and employees from directly or indirectly using EASYLYTE and MEDICA or any other mark, word, or name similar to registered mark which is likely to cause confusion, mistake or to deceive;

7. This Court grant an injunction pursuant to the powers granted it under 15 U.S.C. § 1116 and under state, common law and/or the principles of equity, enjoining and restraining defendant and its agents, servants and employees from directly or indirectly using the product design for its PROLYTE analyzer or any other trade dress which is likely to cause confusion, mistake or to deceive;

19

8.  That this Court, pursuant to the power granted it under 15 U.S.C § 1118, order that all labels, signs, prints, packages, wrappers, receptacles, computer files, and advertisements in the possession of Defendant Diagnostics, Inc. bearing MEDICA and/or EASYLYTE and all plates, molds, matrices, programs and other means of making the same, shall be delivered up and destroyed;

9.  That this Court, pursuant to the power granted it under 15 U.S.C § 1118, order that all labels, signs, prints, packages, wrappers, receptacles, computer files, and advertisements in the possession of Defendant Diagnostics, Inc. bearing the product design for PROLYTE analyzer and all plates, molds, matrices, programs and other means of making the same, shall be delivered up and destroyed;

10. That Plaintiff Medica Corporation be awarded Diamond's actual and consequential damages proximately resulting from Defendant Diamond Diagnostics, Inc.'s conduct and that such award be increased to an amount not to exceed three times such actual and consequential damages pursuant to the Lanham (Trademark) Act. 15 U.S.C. § 1117;

11. That this be declared an exceptional case and that Plaintiff Medica Corporation be awarded its reasonable attorneys fees pursuant to Lanham (Trademark) Act. 15 U.S.C. § 1117;

12. That Plaintiff Medica Corporation be awarded damages and, in addition, that the damages be trebled to reflect Defendant Diamond Diagnostics, Inc.'s conduct, as well as attorneys' fees pursuant to M.G.L. Ch. 93A;

13. That cost of this action be awarded to plaintiff Medica Corporation for all counts of

the Complaint for which costs may be awarded;

14. That the Court award attorneys' fees for all counts of the Complaint for which

attorneys' fees may be awarded; and

15. That the Court award such other relief as this Court deems just and proper.


MEDICA CORPORATION
By its attorneys,

Dated: May 20, 2009

      ___/s/Neal E. Friedman, Esq./
      Neal E. Friedman, Mass BBO No. 180210
      DAVIS & BUJOLD, P.L.L.C.
      112 Pleasant Street
      Concord, New Hampshire 03301
      Telephone: (603) 226-7490
      Facsimile: (603) 226-7499
      E-mail:  patent@davisandbujold.com